## CHAMPAGNE v. UNITY INDUSTRIAL LIFE INS. CO.*
### No. 16055.

Court of Appeal of Louisiana. Orleans.
April 29, 1935.

Normann & McMahon and Harold M. Rouchell, all of New Orleans, for appellant.

J. I. McCain, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit on an industrial insurance policy by the beneficiary. It is defended on the ground that the policy had lapsed for

---

*Rehearing denied 161 So. 783.

nonpayment of premiums. There was judgment below in favor of plaintiff, as prayed for, in the sum of $103.60, and defendant has appealed.

The defendant insurance company issued a combination policy providing for sick benefit and life insurance to Fannie Champagne, plaintiff's wife, on the 20th day of July, 1925. Of the premium of 25 cents a week, which the policy stipulated, 20 per cent., or 5 cents per week, was paid for the life insurance feature of the policy, which provided for a death benefit of $92.50, plus 2 per cent. increase for every year the premium was paid until the additional benefits reached a maximum of 50 per cent. of the death benefit. The premiums were paid up to January 4, 1932. The insured died on September 30, 1934, or two years, eight months, and twenty-six days later. The policy, as required by Act No. 193 of 1906, contains the following reference to extended insurance:

"The first year's insurance under this policy is term insurance. Thereafter a reserve shall be accumulated upon the basis of the Actuaries Table of Mortality, at 4 per cent. interest, and in the event of default in the payment of any premium when due, after premiums for three full years have been paid, this policy, without action on the part of the insured, will be extended for the full amount of the natural death benefit only, for such length of time as the reserve hereunder at the anniversary immediately preceding the date of such default, less two and one-half per centum of the amount insured, will purchase according to the Actuaries Table of Mortality with four (4) per cent. interest."

The contention of plaintiff is that at the time of the default in payment of premiums the amount of reserve, under the terms of the policy for the purchase of extended insurance, was $2.38 and that this amount was sufficient to purchase extended insurance for $100.11 for three years, three months, and ten days, or about seven months beyond the date of the death of the insured. On the other hand, the defendant contends that the amount is only $1.63, which sum will purchase extended insurance in the amount of $100.11 for only two years, three months, and thirteen days, or five months and thirteen days short of the date of the death of the insured.

Plaintiff's case is largely built upon the testimony of H. C. Barthe, who qualified and was sworn as "an expert actuary" over the strenuous objection of defendant's counsel. Mr. Barthe's qualifications as an expert are vigorously denied in brief and in argument in this court upon the ground that he lacks the necessary educational and scientific training and has had no connection with an insurance company in the capacity of actuary.

We select from the several definitions of an actuary given in counsel's brief the following from Webster's International Dictionary:

"One whose profession it is to calculate insurance risks and premiums; a person skilled in the theories and mathematical problems involved in making these calculations."

Article 44 of the Code of Practice defines experts as "persons versed in the knowledge either of a science, an art, or a profession, selected in order to give their opinion on some point or question on which the decision of a cause depends."

Mr. Barthe has been in the insurance business for a number of years and, at the date that he testified, had been engaged for some three years in the operation of what he termed "the American Adjustment Agency," whose business it is to "calculate values for life insurance policies" and handle lapsed life insurance policies for adjustment and collection. He stated that he had examined between twenty and twenty-five thousand lapsed policies and had calculated the extended insurance thereon. In our opinion Mr. Barthe was properly permitted to qualify as an expert by the learned trial judge, with whose discretion in that regard we would be loath to interfere under all circumstances. State v. Mathis, 106 La. 263, 30 So. 834. The value of the testimony given by Mr. Barthe, or any other expert, depends very largely upon its intrinsic worth, its persuasiveness, when contrasted with the evidence of other experts, and its reasonableness. He testified that he calculated the extended insurance by the following method: Taking the total amount of premiums paid on the policy during the time that it was in force, which is conceded to be $13, he deducts $3.18 as the loss ratio according to the mortality tables. The figure $3.18 is obtained by a complicated mathematical process more easily followed by actuaries and accountants and those skilled in the use of figures than by the writer of this opinion. Fortunately, there is little or no dispute concerning the correctness of this figure, so we will say no more about it. Continuing Mr. Barthe's calculation, the $3.18 is deducted from the $13, leaving the sum of $9.82. He then subtracts $4.94, which he estimates as the cost of doing business, or

the "loading charge" from $9.82, and he arrives at the figure of $4.88 as the gross amount applicable to the reserve. From this sum the defendant under its policy is permitted to deduct 2½ per cent. of the value of the policy at the time of default ($100.11), or $2.50, as a surrender charge, which, when subtracted from $4.88, leaves the final figure of $2.38, the net amount available for the purchase of extended insurance. As we have said, Mr. Barthe's mathematics is not seriously criticized. Counsel differ only with respect to the "loading charge" of $4.94, which Mr. Barthe obtains by allowing 38 per cent. of the total premium of $13 for that purpose. He explains the allowance of 38 per cent. by saying that most insurance authorities allow 25 per cent. for ordinary life insurance companies, plus 10 per cent. for industrial companies, to which he has added, for good measure, an additional 3 per cent. This percentage, he says, is the maximum which can be used for cost of operation without sacrificing actuarial solvency.

The defendant contends that Mr. Barthe's arbitrary figure of 38 per cent. does not comport with the actual practice of the defendant company, which devotes half of its income, or 50 per cent., to the expense of doing business, and, if 50 per cent. of $13, or $6.50, be allowed as the loading charge, there would be only $1.63 for the purchase of extended insurance, which would be insufficient to cover the period from the date of the lapse of the policy to the assured's death.

Defendant presented no expert witness, but contented itself with the testimony of H. L. Willcox, its assistant general manager. Mr. Willcox' testimony was almost entirely hearsay and unconvincing. He stated frankly that he was not an actuary and knew nothing about the business of an actuary.

Without discussing the question of whether the actual percentage of premium income which an insurance company applies to overhead or "loading charges" should be used in figuring the reserve applicable to extended insurance, or whether the correct practice should be to use a figure consistent with the standard practice of insurance actuaries and not inconsistent with solvency, we observe that in this instance there is no satisfactory proof of what the defendant company's loading charge really was, and, therefore, accept Barthe's statement concerning the maximum which could properly be used for that purpose, particularly since there is no other expert testimony in the record.

An expert fee of $15 was allowed Mr. Barthe, which. it is claimed, should be increased to $50 because of his prolonged examination on the witness stand. The fee is small, but so is the amount sued for.

A slight error appears in the amount of the judgment, which should be $100.11 and not $103.60. Consequently it should be amended in that regard.

For the reasons assigned, the judgment appealed from is amended by decreasing the sum awarded plaintiff to $100.11, and, as thus amended, affirmed.

Amended and affirmed.